

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00395-CV
No. 07-18-00400-CV

**IN THE INTEREST OF K.J.C., A CHILD**
**IN THE INTEREST OF J.H., A CHILD**

On Appeal from the 100th District Court
Childress County, Texas
Trial Court Nos. 9242 and 10709, Honorable Stuart Messer, Presiding

February 26, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

The mother of K.J.C. and J.H. and the father of K.J.C. appeal from the trial court's orders terminating their parental rights to their children.[1] On appeal, both parents challenge only the trial court's finding that termination of their rights was in the best interest of the children.[2] We will affirm.

---

[1] To protect the children's privacy, we will refer to the children by their initials and to the parents as "the mother" and "the father." TEX. FAM. CODE ANN. § 109.002(d) (West 2017); TEX. R. APP. P. 9.8(b).

[2] The parental rights of J.H.'s father also were terminated in this proceeding. He has not appealed.

Background

K.J.C. was fourteen years old at the time of the final hearing; J.H. was seven. Appellee, the Texas Department of Family and Protective Services, became involved with the family in late 2016 after receiving allegations of drug use and neglectful supervision by the mother. The father did not live with the mother and the children at that time. An October 2016 drug test showed the mother was using methamphetamine. At that time, the mother agreed to participate in services. Thereafter, the mother refused to take a drug test but admitted use of marijuana. She tested positive for amphetamine, marijuana, and methamphetamine in March 2017.

In April 2017, the Department filed pleadings that included a petition for protection of a child, for conservatorship, and for termination in suit affecting the parent-child relationship. The trial court entered an order removing the children from the care of the mother and the father. The children were placed with their maternal grandmother, but later were moved to a group home where they remained at the time of the final hearing in September 2018.

The father did not appear for the final hearing, but his attorney was present. The court heard witnesses that included the mother, the grandmother, the Department's caseworker, and a therapist. The mother and a therapist testified the mother attended drug treatment but relapsed. In her testimony, the mother admitted to using methamphetamine "once a month." But, she later said she had not used methamphetamine since June 2018. The therapist agreed the mother came to at least one counseling session "acting impaired" and that the mother was not participating in the

2

programs necessary to her recovery. She testified that the mother was not capable of meeting the needs of her two daughters. The mother testified she did not have a stable home or a job. The therapist concluded it was in the best interest of the children that they remain in the custody of the Department.

The caseworker testified that four drug tests conducted on the father indicated he had used cocaine despite his assertions to the contrary. The father also failed to complete required services, most significantly failing to complete visitation with K.J.C., leading to the child's extreme disappointment. The caseworker and therapist testified this was detrimental to K.J.C. and termination of the father's rights was in K.J.C.'s best interest.

The attorney ad litem for the children told the court it was in the best interest of the children that the parents' rights be terminated, that the Department be named permanent managing conservator, and that the Department continue counseling with the grandmother and the children.

The trial court terminated the mother's and the father's parental rights based on predicate grounds of endangering conditions, endangering conduct, and failure to comply with a court order establishing actions necessary for return of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), and (O) (West 2018). It found also clear and convincing evidence supporting a conclusion that termination of the parents' rights was in the children's best interest. TEX. FAM. CODE ANN. § 161.001(b)(2). The trial court named the Department as permanent managing conservator and ordered the Department to continue family therapy with the grandmother to further the possibility that the children could be placed with her at a later date.

Analysis

Best Interest

Through their respective appellate issues, the parents argue the evidence is legally and factually insufficient to support the trial court's best interest finding. The parents do not challenge the predicate grounds on which the trial court terminated their parental rights. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E) and (O). They both concede the evidence is sufficient to support those grounds. *See In re D.S.,* 333 S.W.3d 379, 388-89 (Tex. App.—Amarillo 2011, no pet.) (If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights. We are bound by unchallenged findings supporting termination). Further, the parents acknowledge that the same evidence that supports the predicate grounds for termination under section 161.001(b)(1)(D), (E), and (O) is relevant to the sufficiency of the evidence supporting the best interest finding under section 161.001(b)(2). *In re E.C.R.,* 402 S.W.3d 239, 249-50 (Tex. 2013) (citing *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002)).

However, the parents assert that when the *Holley* factors and the factors set forth in Family Code section 263.307(b) are considered, the trial court's best interest finding should be reversed. *See Holley v. Adams,* 544 S.W.2d 367, 371-72 (Tex. 1976) (citations omitted); TEX. FAM. CODE ANN. § 263.307(b) (West 2018). In evaluating the best-interest evidence for legal sufficiency in parental-rights termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the court's best interest finding was true. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005)

(per curiam) (citing *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002)). We review all the evidence in the light most favorable to the best interest finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* Witness credibility issues "that depend on appearance and demeanor cannot be weighed by the appellate court; the witnesses are not present." *Id.* (citation omitted).

We are required to perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support the termination of a parent-child relationship. *In re A.B.,* 437 S.W.3d 498, 500 (Tex. 2014). In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, based on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent-child relationship would be in the best interest of the child. *In re C.H.,* 89 S.W.3d at 28. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

The Mother

Most significant here as to the mother is her continued drug use despite participation in treatment. The mother acknowledged her drug use, her failure to complete treatment programs, and her relapse. She admitted she used methamphetamine the day she returned from inpatient treatment. The mother also testified she used methamphetamine while her children were at school and she was their

5

caretaker after school. A counselor testified K.J.C. told her she witnessed her mother using drugs with J.H. present. The counselor said, "most of [K.J.C.'s] anger is the fact that when she would walk in and see [J.H.] asleep by her mom, and her mom using." And, K.J.C. "was positive for methamphetamines" when she was removed from her mother's care. When asked about her ability to parent while under the influence of methamphetamine, the mother answered, "I've been everywhere in this town under the use of methamphetamines, and it didn't affect my ability nowhere." When asked about her most recent positive drug test, the mother adamantly denied the test result saying, "there's no way it could be possible . . . especially the numbers. The numbers can't be that high." We do not second-guess the trial court's determinations regarding the credibility of testimony. *See In re J.P.B.,* 180 S.W.3d at 573. The court reasonably could have accepted the Department's evidence, and considered it to provide strong support for its finding that termination of the mother's rights was in the children's best interest. *See Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ) (parents' "drug-related conduct is a significant factor" to which the factfinder "could have attached great weight in evaluating the best interests of the child"). The trial court also could have reasonably inferred from the evidence presented that there is significant risk the mother's drug use would continue, and such conduct would further endanger the children's physical and emotional well-being. *Toliver v. Tex. Dep't of Family & Protective Servs.,* 217 S.W.3d 85, 102 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (parent's "frequent and long-term use of narcotics endangered the children's welfare"). This too weighs in favor of termination of the mother's rights.

6

The mother admitted her failure to complete most of the services set forth in the service plan provided her by the Department, including failure to complete various classes and programs, failure to obtain and maintain housing and employment, and failure to pay court-ordered child support. A substance abuse counselor also testified to those omissions. The grandmother testified the mother did not complete her services, was not employed, and suffered from depression but had not sought treatment. The caseworker testified the mother's drug use endangered her children's emotional and physical well-being, that the mother was unable to meet their emotional and physical needs, that the mother had not shown a willingness or ability to make positive changes to meet her children's needs, and that the mother did not have adequate parenting skills, and told the court she believed the mother's rights should be terminated. This evidence supports the trial court's best-interest finding. *See In re S.B.,* 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) ("a parent's drug use, inability to provide a stable home, and failure to comply with [the] family service plan support a finding that termination is in the best interest of the child").

The children were, as noted, aged fourteen and seven at the time of the final hearing. Neither child expressed a desire to return to the care of their mother. K.J.C. was "very angry" with her mother, stemming partly from her mother's drug use with J.H. present, and told a family counselor she did not want her mother living in the same city with her. J.H. told the family counselor that she desired to be placed wherever K.J.C. was placed. The caseworker testified J.H. appeared to be "a little bit more bonded" with the mother than was K.J.C., partly due to her age. The mother nevertheless argues on appeal that the evidence shows it was not in her children's best interest to terminate her

rights because the children were bonded to her. We disagree that the trial court was required to adopt the mother's assessment of the evidence. Finally, we note the court heard the caseworker testify to her opinion it would not be detrimental to the children if they no longer had contact with the mother. From all the evidence, the trial court could have concluded the children's desires would be best satisfied through termination of the mother's parental rights. *See, e.g., In re P.M.,* No. 02-14-00205-CV, 2014 Tex. App. LEXIS 13947, at *89 (Tex. App.—Fort Worth Dec. 31, 2014, pet. denied) (mem. op.) (finder of fact could have reasonably formed a firm belief or conviction that the child's desires and her emotional needs now and in the future could best be met by her foster family).

At the time of trial, the Department's long-term plan for the children was uncertain. They remained in the same children's home, where, according to the testimony of a children's home therapist, K.J.C. was "thriving." J.H., the therapist said, was doing well in school and progressing in therapy. The Department had not yet searched for an adoptive permanent placement because of the potential the children could be returned to the maternal grandmother's care in the event she is able to provide a safe home. The attorney ad litem for the children argued to the court that termination was in their best interest, but also urged the court to allow the Department to pursue possible placement with the grandmother. The record shows the children were bonded with their grandmother and K.J.C. expressed a desire to maintain that relationship. More than one witness testified to the effect that return to the grandmother's home was not in the children's best interest at that time. The mother also acknowledged that the grandmother's home was not a stable environment. Our courts have long recognized

8

that the parent's and Department's plans for the child are a proper consideration in termination cases, *see Holley*, 544 S.W.2d at 371-72, but that certainty regarding a child's future home is not a prerequisite to termination of parental rights. *See, e.g.*, *In re C.H.*, 89 S.W.3d at 28 (lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor in termination decisions).

The mother did not have a plan in place to care for her children, other than their return to the grandmother's care. The mother did not have a stable home or income, and had demonstrated a lack of ability to properly care for and parent her children. *See Adams v. Tex. Dept. of Family & Protective Servs.*, 236 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (parent's history of failing to provide children with consistent and stable environment supports finding that termination of parental rights is in children's best interest). The therapist told the court the mother had not made any progress toward positive parenting. The mother admitted her failings in parenting but testified to her intention to look for employment "first thing tomorrow morning," urging the court to give her additional time to complete her required services. As we have noted, it was the role of the trial court to evaluate the credibility of the testimony it heard.

Considering all the evidence the court heard under the required standards of review, we conclude it permitted the court reasonably to reach a firm belief or conviction that termination of the mother's parental rights was in her children's best interest. *See In re J.P.B.,*180 S.W.3d at 573; *In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.) (need for a stable and permanent home is the "paramount consideration" in assessing best interest of children). The evidence was both legally and factually sufficient.

The Father

The father makes the general argument that the evidence was insufficient to show that termination of his parental rights to K.J.C. was in her best interest.

As with the mother, a significant issue with regard to the father was his continued drug use. The caseworker testified that while the father had stable housing and employment, he continued to use drugs. Four drug tests spanning from May 2017 to August 2018 indicated the father had used cocaine despite his assertions he had not used the drug. He also admitted to a psychologist that he had sold and used cocaine. We do note that the record indicates the father has stable employment that requires drug testing. The father had not, at least to the knowledge of the caseworker, been terminated from employment for drug use. After our review of the record, we find the trial court reasonably could have resolved the disputed evidence of the father's continued drug use in favor of its best-interest finding. *See In re C.H.*, 89 S.W.3d at 25 (factual sufficiency review of disputed evidence). The father also failed to complete several court-ordered services, including counseling and some drug testing. *See In re S.B.,* 207 S.W.3d at 887-88 ("a parent's drug use, inability to provide a stable home, and failure to comply with his family service plan support a finding that termination is in the best interest of the child"). The caseworker testified the father's drug use endangered K.J.C.'s emotional and physical well-being, that he was unable to meet her emotional and physical needs, and that his rights should be terminated.

The court also heard evidence from which it could have concluded the father was largely disinterested in K.J.C. The caseworker testified that one of the court-ordered

requirements was that the father attend visits with his daughter at least twice per month. She told the court the father did not complete that service. He attended "probably less than five" of those visits. Very little evidence was offered regarding the father and his relationship with K.J.C., apparently because he was largely absent. He had a history of incarceration and left K.J.C. in the care of the mother, a person he knew used controlled substances. However, the therapist did testify that K.J.C. desired a relationship with her father and was "very disappointed when she would expect him to show up and he wouldn't show up." The therapist noted she had no knowledge of any progress between father and daughter due to lack of consistent visits. The therapist at the children's home testified the disappointment when the father failed to attend visitation had an impact on K.J.C. because "she is just at an age where it's important." The caseworker testified to that disappointment and agreed that it was not in K.J.C.'s best interest for the father to "give her expectations and then not follow through." The record does not indicate the father had any bond with K.J.C.

And, nothing in the record shows the father had a plan to care for his child. At the time of the final hearing, the father had a clean home, physically suitable for a child. The father had paid his court-ordered child support. But there was no evidence of his plan or ability to care for K.J.C. This aspect of the record thus supports the trial court's best-interest finding. *See In re K.C.,* 219 S.W.3d at 931 (need for a stable and permanent home is the "paramount consideration" in assessing best interest of child).

We find, viewing the evidence in the requisite light, that the applicable factors weigh in favor of termination of the father's rights.

Conclusion

We find the evidence both legally and factually sufficient to support the trial court's finding that termination of the parents' parental rights was in the children's best interest. We resolve each of the parent's issues against them. Having overruled each of the parent's issues, we affirm the judgments of the trial court.

James T. Campbell
Justice